# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL ACTION |
| ) | |
| v. ) | No. 10-20141-KHV |
| ) | |
| MAURICE CRAWFORD, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

On November 4, 2010, a grand jury charged defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). See Indictment (Doc. #10). This matter comes before the Court on defendant's Motion To Suppress (Doc. #19) filed December 30, 2010. On February 1, 2011, the Court held an evidentiary hearing on defendant's motion. For reasons set forth below, the Court overrules the motion to suppress.

## Facts

The government offered the following evidence at the suppression hearing.

On October 11, 2010, at approximately 5:10 p.m., Kansas City, Kansas Police Department ("KCKPD") Officer John Miskec was on patrol traveling westbound on Central Avenue in Kansas City, Kansas when he observed defendant driving a gold, four-door vehicle traveling eastbound. As he passed the vehicle, Officer Miskec observed that defendant and his passenger were not wearing seatbelts. Officer Miskec promptly u-turned at roughly Tenth Street and Central Avenue. He then followed defendant's vehicle as it headed eastbound on Central Avenue at up to 30 miles per hour in a 20 mile per hour zone. Defendant signaled that he was going to turn left onto Ninth Street. Just before

defendant's vehicle turned, KCKPD Officer Reyes radioed Officer Miskec that he would assist with the stop. As defendant turned onto Ninth Street, Officer Miskec followed and activated his lights and siren.

Officer Miskec's patrol car was equipped with video and audio recording devices that preserved footage beginning 30 seconds before he activated his lights and siren. The video depicts the vehicle exceeding the posted speed limit on Central Avenue and shows that neither defendant nor the passenger was wearing a seatbelt when the vehicle turned left onto Ninth Street. The video captures the activity of the officers and the occupants of the vehicle for the duration of the stop and corroborates the officers' testimony. The audio is muffled and generally indecipherable.[1]

After turning onto Ninth Street, defendant pulled to the right side of the road and stopped.[2] Officer Miskec pulled over behind the vehicle and Officer Reyes pulled in front of it because the street had no room for his patrol car immediately behind Officer Miskec's vehicle. The two patrol cars effectively boxed in defendant's vehicle. The emergency lights of both patrol cars remained on for the duration of the stop.

Officer Reyes exited his patrol car and walked to defendant's vehicle. Meanwhile, Officer Miskec observed defendant moving from side to side within the passenger compartment of the vehicle. Officer Reyes made first contact with defendant. He recognized both defendant and his passenger from a previous traffic stop in which he warned defendant for driving with his passenger hanging out of the car window. Officer Reyes casually spoke with defendant and asked for identification from defendant

---

[1] The audio is difficult to hear because Officer Miskec forgot to attach the microphone to his belt when he exited his patrol car to speak with defendant. Officer Miskec testified that he forgot the microphone because he had not had to use audio recording equipment for roughly two-and-a-half years and so he was not accustomed to attaching it to his belt before exiting his vehicle.

[2] Ninth Street is a two-lane residential street. The video shows that several cars and at least three pedestrians passed the scene of the stop.

and his passenger. Defendant asked Officer Reyes why he was stopped. Officer Reyes told defendant that Officer Miskec would explain the reason for the stop.[3] Officer Miskec approached the vehicle and Officer Reyes handed him the occupants' identification.

Officer Miskec took the occupants' identification back to his patrol car where he ran their information through a computer system.[4] Meanwhile, Officer Reyes continued conversing with defendant. Officer Reyes' demeanor was calm. Defendant then handed Officer Reyes another document, possibly the vehicle insurance information. Officer Reyes turned to take the document back to Officer Miskec's car. Defendant quickly summoned Officer Reyes back to his car where they continued to converse in a casual manner. Officer Reyes then took the document to Officer Miskec, who was in his patrol car running the occupants' information. As Officer Reyes walked from defendant's car to Officer Miskec's car, Officer Miskec saw defendant lean out the driver-side window, watch Officer Reyes walk away and then again move from side to side and bend forward inside the passenger compartment.[5] Defendant's movements led Officer Miskec to suspect that defendant was trying to hide something under his seat.[6]

---

[3] Later during the stop Officer Miskec told defendant that he stopped him for a seatbelt violation. Officer Miskec did not mention the speeding violation had during the stop or in his report of the stop.

[4] Officer Miskec contacted dispatch for assistance in running the passenger's name – Allen Moore – because it is a "common name."

[5] This movement occurred from 17:15:02 to 17:15:08.

[6] On cross-examination, defense counsel used the word "hunch" to describe Officer Miskec's belief that defendant might have been trying to hide contraband in his vehicle. Officer Miskec accepted defense counsel's wording in several questions and once used the word "hunch" to describe his suspicion in responding to a question. Officer Miskec later corrected defense counsel's use of the word and stated that he "reasonably suspect[ed]" illegal activity, and would not call his suspicion a hunch.

-3-

Defendant again summoned Officer Reyes back to his car, where they continued to calmly converse. At one point during their conversation, defendant asked Officer Reyes for help charging his car battery. Officer Reyes then returned to Officer Miskec's patrol car. At that point, Officer Miskec asked Officer Reyes, "what do you think's in there?" At this point, Officer Miskec could have given defendant a citation and sent him on his way, but because the officers thought that defendant was hiding contraband underneath his seat they decided to have the occupants get out of the car. Officer Reyes approached the driver's side and Officer Miskec approached the passenger side. Once defendant exited the vehicle, Officer Reyes patted him down. Defendant then walked to the back of his vehicle.

Officer Miskec informed defendant that he was stopped for a seatbelt violation, and asked him who the car belonged to and where defendant was coming from. Defendant indicated that the car did not belong to him. Officer Miskec then asked defendant if he had anything illegal in the car. Defendant said no. Later in the conversation, Officer Miskec asked defendant if he had any guns or drugs in the car. Defendant said he did not have any drugs. Defendant's response made Officer Miskec's "antennae go up." Officer Miskec continued to engage defendant in conversation because based on his demeanor, he thought defendant was trying to hide contraband (possibly a weapon) in the car. During the conversation Officer Miskec asked defendant if he would consent to the officers searching the car. Defendant first said that he could not consent because it was not his car. Officer Miskec then walked back to his patrol car to retrieve defendant's driver's license and his passenger's identification. While he was doing so, defendant stated that he did not have any outstanding warrants, and Officer Miskec agreed. Officer Miskec knew, however, that defendant was a convicted felon.

Officer Misckec again asked if defendant would consent to a search of the vehicle. Defendant consented to the search. Officer Miskec then returned the identifications to defendant. The officers never raised their voices or drew their weapons during any of their conversations with defendant.

Officer Reyes remained at the rear of defendant's vehicle with defendant while Officer Miskec walked to the driver-side door and asked defendant's passenger to exit the vehicle. After the passenger had exited and Officer Reyes patted him down, Officer Miskec opened the driver-side door, looked under the driver's seat and saw a gun. Officer Miskec closed the driver-side door and ordered the passenger to step away from the vehicle. Both officers then handcuffed defendant. Officer Reyes placed defendant in the backseat of his patrol car while Officer Miskec detained the passenger on the curb.

## Analysis

The Fourth Amendment of the United States Constitution protects persons and their houses, papers and effects against unreasonable searches and seizures. See U.S. Const. amend. IV. Evidence obtained in violation of a person's Fourth Amendment rights may not be admitted into evidence against that person. Here, defendant argues that the Court should suppress all evidence and statements resulting from the search of the car he was driving on October 11, 2010.[7] Defendant does not challenge the lawfulness of the initial stop, but only challenges the officers' extension of the stop and the search without independent reasonable suspicion or valid consent.

**I.    Extension Of Traffic Stop**

Defendant argues that Officers Miskec and Reyes lacked a reasonable and articulable suspicion

---

[7]     The car which defendant was driving on October 11, 2010 was not his car, but the government does not contest that defendant has standing to assert his Fourth Amendment rights with respect to the search and seizure in question.

that defendant was engaged in illegal activity when they decided to extend the traffic stop beyond the time necessary for issuing defendant a citation. The government argues that asking defendant to step out of his vehicle did not extend the stop and that, in any event, Officer Miskec had reasonable suspicion that justified further investigation.[8] At that point, Officer Miskec knew of defendant's prior felony conviction and had observed repeated furtive movements by defendant throughout the stop. At one point, Officer Miskec saw defendant watch Officer Reyes walk away from defendant's car before moving side-to-side and leaning forward as though defendant was hiding something under his seat.

A traffic stop is an investigative detention governed by the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). Such a stop is valid under the Fourth Amendment if it is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). A traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop. United States v. Rice, 483 F.3d 1079, 1083 (10th Cir. 2007). An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure so long as those inquiries do not measurably extend the duration of the stop. Johnson, 129 S. Ct. at 788 (citing Muehler v. Mena, 544 U.S. 93, 100-01 (2005)).

---

[8] The extension of the stop in question here – from the time Officer Miskec stated "what do you think's in there?" to the time that he returned the identifications – lasted roughly two minutes and 51 seconds (from 17:16:38 to 17:19:29). This extension may be de minimis and would therefore not require reasonable suspicion. See Arizona v. Johnson, 129 S. Ct. 781, 788 (2009) (inquiries into matters unrelated to traffic stop do not convert stop into unlawful seizure if inquiries do not measurably extend duration of stop). Regardless, the Court finds that the officers had reasonable suspicion to extend the stop.

A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning." United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007), abrogated in part on other grounds, Davis v. Washington, 547 U.S. 813 (2006); see Garrison v. Ortiz, 296 Fed. Appx. 724, 726 (10th Cir. 2008). If the officer continues to question the driver in the absence of either reasonable suspicion or consent, then "any evidence derived from that questioning (or a resulting search) is impermissibly tainted in Fourth Amendment terms." United States v. Guerrero-Espinoza, 462 F.3d 1302, 1310 (10th Cir. 2006). When evaluating the existence of reasonable suspicion, the Court looks to the "totality of circumstances" to see whether the detaining officer had a "particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002); Ramirez, 479 F.3d at 1243.

> Factors, which when taken separately may be perfectly innocent behavior, can support a finding of reasonable suspicion when taken together. Conversely, although the nature of the totality of the circumstances makes it possible for individually innocuous factors to add up to reasonable suspicion, it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation. In analyzing the factors that may amount to reasonable suspicion, we must be careful to judge the officer's conduct in light of common sense and ordinary human experience but also to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances.

United States v. Wallace, 429 F.3d 969, 975-76 (10th Cir. 2005).

Here, the government relies heavily on defendant's unusual furtive movements before and during the stop. Defendant argues that his movements were consistent with defendant popping his hood to charge his car battery or putting a wallet in his left back pocket. The government argues that defendant's movements were sufficient to lead a reasonable officer to suspect that defendant was hiding contraband under his seat. Defendant cites a number of cases which state that furtive movements alone

are insufficient to establish reasonable suspicion. See United States v. McKoy, 428 F.3d 38 (1st Cir. 2005) (dangerousness of neighborhood, and defendant's nervous demeanor and movement toward center console alone insufficient to establish reasonable suspicion); United States v. Ridley, 162 F.3d 1175 (Table), 1998 WL 778381, at *3 (10th Cir. 1998) (nonbinding Order And Judgment) (furtive movements alone not sufficient to establish reasonable suspicion); United States v. Humphrey, 409 F.2d 1055, 1059 (10th Cir. 1969) (same). But see United States v. Montes, No. 09-2269, 2010 WL 4263308, at *3-4 (10th Cir. Oct. 29, 2010) (distinguishing McKoy, 428 F.3d 38; reasonable suspicion where defendant uncommonly nervous during routine traffic stop, watched officers in rearview mirror before leaning forward in manner both officers described as not normal).

Contrary to defendant's contention, however, Officer Miskec's decision to extend the traffic stop was based on more than potentially innocent furtive movements. Rather, Officer Miskec observed that defendant only made these movements when Officer Reyes could not see inside the passenger compartment of his vehicle. Specifically, toward the end of the stop, defendant leaned his head out of the driver-side window to watch Officer Reyes walk away from defendant's car, then proceeded to move dramatically from side-to-side and then lean forward as though pushing something underneath his seat. Officer Miskec also knew that defendant was a convicted felon. Taken together, these facts and all reasonable inferences which Officer Miskec drew from them based on his training and experience were sufficient to establish reasonable suspicion that defendant was engaged in illegal activity, i.e. hiding contraband under his car seat. See Montes, 2010 WL 4263308, at *3-4; United States v. Dejear, 552 F.3d 1186, 1201 (10th Cir. 2009) (citing United States v. Bullock, 510 F.3d 342, 348 (D.C. Cir. 2007), cert. denied 553 U.S. 1024 (2008), for proposition that furtive gestures in response to presence of police can serve as basis of reasonable suspicion); see also United States v. Stephenson, 452 F.3d 1173, 1176

(10th Cir. 2006) (defer to ability of trained law enforcement officer to distinguish between innocent and suspicious actions).

Officer Miskec's decision to extend the traffic stop beyond the time required to issue a citation was therefore based upon reasonable suspicion.

**II.    Vehicle Search**

Defendant also argues that Officer Miskec lacked any reasonable suspicion that would justify searching defendant's vehicle and that defendant did not freely consent to the search. The government argues that Officer Miskec developed a reasonable suspicion which justified the search of defendant's car, based on his furtive movements and nervous behavior, his prior felony conviction and his answer to the question whether he had any guns or drugs in the car. The government also argues that defendant's consent to search was valid.

The Supreme Court has approved of Terry-type searches of vehicles during traffic stops, as follows:

> The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

Michigan v. Long, 463 U.S. 1032, 1049 (1983) (internal quotations, citations and alterations omitted); see also United States v. Palmer, 360 F.3d 1243, 1246 (10th Cir. 2004).

At the point when Officer Miskec decided to search defendant's vehicle, he knew that defendant was a convicted felon, he had observed defendant's furtive movements and he suspected that defendant was trying to hide contraband under his seat. He had asked defendant whether he had guns or drugs in

-9-

the car.  Defendant responded that he did not have drugs, thereby tacitly admitting that he had guns.[9]
In any event, defendant's response rightfully raised a red flag.  See United States v. Karam, 496 F.3d 1157, 1164 (10th Cir. 2007) (even "vague and evasive" answers may be considered, in conjunction with other factors, as contributing to officer's determination of reasonable suspicion).  These specific facts, along with the rational inferences from them, would permit a reasonable law enforcement officer to believe that defendant was hiding a weapon in his car and could gain immediate control of it if the officers allowed defendant to return to his car.  See Long, 463 U.S. at 1051-52; Dejear, 552 F.3d at 1201 (furtive hand gestures by suspect justify officers in fearing for their safety); Bullock, 510 F.3d at 348 (same).

Although the officers described the traffic stop as generally nonconfrontational, a reasonable suspicion that defendant would have access to a weapon if they allowed him back into his car is a sufficient basis for performing a protective search of defendant's vehicle.  Officer Miskec therefore properly performed a protective search of defendant's car, during which he discovered a gun.

Because Officer Miskec had reasonable suspicion that defendant could gain access to a weapon in the car if the officers allowed him to return to it, the search was valid and the Court overrules defendant's motion to suppress.[10]

---

[9] Defendant argues that this answer was at worst, vague or evasive. The Court disagrees.

[10] Although Tenth Circuit law on consent to search while detained during a traffic stop is somewhat unclear, compare Guerrero-Espinoza, 462 F.3d 1309 & n.7 with United States v. McRae, 81 F.3d 1528, 1537 (10th Cir. 1996), defendant's consent was voluntary even though he was detained at the time he consented. The officers' interaction with defendant was calm and nonconfrontational, they never drew their weapons or raised their voices and defendant expressly consented to the search. Based on the totality of the circumstances, defendant's consent was valid. See McRae, 81 F.3d at 1537 (consent valid even though officer retained his license and rental papers where consent was clear and unequivocal and no evidence of duress or coercion).

**IT IS THEREFORE ORDERED** that defendant's Motion To Suppress (Doc. #19) filed December 30, 2010, be and hereby is **OVERRULED**.

Dated this 3rd day of February, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge
